## LAKE ERIE & WESTERN RAILROAD COMPANY
### v.
### HARMON R. HELMERICKS.

*Railroads—Negligence—Injury to Stock—Recovery for—Insufficiency of Cattle Guard—Evidence—Instructions—Attorney's Fee.*

1. In an action to recover damages for the killing of horses on a railroad through alleged insufficiency of a cattle guard, testimony of a witness that he had seen cattle and colts cross another cattle guard on defendant's road in the vicinity of the one complained of, was properly admitted, evidence having been introduced to show that the guards were alike, and one of defendant's witnesses having testified that the guard complained of was the best known, and was in general use, but that if cattle and colts would freely cross it, it would not be sufficient.

2. A witness having no more knowledge of cattle guards than is possessed by ordinarily intelligent and observant farmers living by a railroad, is not competent to testify as an expert as to the sufficiency of a cattle guard.

3. The amount of appellee's attorney's fee was properly submitted to the jury, and it was not necessary for plaintiff to show by evidence what he had paid, or was to pay, but evidence as to what was a reasonable fee was competent.

[Opinion filed September 20, 1890.]

APPEAL from the Circuit Court of Ford County; the Hon. A. SAMPLE, Judge, presiding.

Mr. MILTON H. CLOUD, for appellant.

Messrs. COOK & MOFFETT, for appellee.

CONGER, P. J.   This was an action on the case to recover the value of two horses killed on appellant's road, by reason, as it is charged, of an insufficient cattle guard. The declaration contained five counts. The first, second and fifth counts were substantially the same, and charged that two of appellee's horses got upon appellant's road over an insufficient cattle guard at the side of a highway crossed by the railroad and

were struck and killed by appellant's engines.   Trial and verdict for appellee assessing his damages at $310 for the value of the horses, and $50 for attorney's fees, and judgment for $360.

The first point raised by appellant is, that it was error to permit a witness for appellee to state that he had seen cattle and colts cross another guard on appellant's road, in the vicinity of the one in question.   Appellant had called its claim agent, one Bennett, who testified to the jury quite fully as to the form and construction of the guard in question; that it was the best one known and in general use by railroads, and that it was, in his opinion, sufficient to prevent stock from getting on the track.   Upon cross-examination he stated that if cattle and horses would walk freely over such a cattle guard it would not be good and sufficient, but he had never known them to do so.   Had seen them go up to such guards, look at them, and turn around and go back.   Appellee then called the witness Helmricks, who stated that he knew the guard in question.   Knew one further west on appellant's road of the same kind and make.   Never measured them, but they looked to be of the same size.   Had some cross bars and some kind of a pit, and that he had seen cattle and colts pass freely over the latter guard.   No question seemed to be made on the trial but that these guards were of the same kind and character, and it would be reasonable for the jury to draw a conclusion that their effect in preventing stock from getting upon the road would be substantially the same.   In the language of appellant's counsel—"Do cattle guards of the size and construction of the one in controversy reasonably serve the purpose for which they are intended?"   The evidence complained of tended to answer this question, and we think was proper.

L. S. Holderman, a witness for appellant, testified:

" I reside at Paxton; am engaged in the agricultural implement business and in keeping stock.   I have a farm adjoining this railroad six miles west of here.   This cattle guard is at the west end of my farm.   I have seen it frequently.   It is in good repair.   I saw it February 18th, the Tuesday after

these horses were killed. It did not give evidence of having been recently repaired. I have seen numerous cattle guards, and have had a good deal of experience in handling stock. I was raised along side of a railroad. I know something of the disposition of stock to cross cattle guards. I have seen them cross cattle guards.

Q. Now, I will ask you, whether, as a stock man, you know that it is a pretty difficult matter to construct a cattle guard that some animals won't cross?

Objected to; objection sustained; defendant excepts.

Q. What has been your observation about that?

Objected to; objection sustained; defendant excepts.

Q. I will ask you what your opinion is of this cattle guard in controversy, as to its being or not being a sufficient guard to prevent stock from getting onto the track?

Objected to, because witness does not show himself competent to testify.

It is insisted that the court erred in sustaining objections to these questions. We are inclined to think this witness was not competent to give his opinion as an expert about the subject inquired of, without determining whether the questions themselves would be proper if the witness had shown sufficient knowledge to have been an expert. The witness seemed to have no more or greater knowledge upon the subject than other ordinarily intelligent farmers who live near railroads, and make such observations as such men commonly do. He could properly have stated to the jury any instances he had observed of cattle crossing or attempting to cross the guard in question, or others upon the road like it, that would assist the jury in reaching the conclusion, but he was no more competent to decide as to the sufficiency of the particular guard, than were the jury, or any other person of ordinary intelligence and observation.

It is next insisted that the court erred in submitting the question of the amount of appellee's attorney's fee to the jury, and in directing them to find and allow the amount by their verdict. There is no force in this objection, and it was, we think, the correct practice. The fees were claimed in the dec-

laration, proven before the jury, and they were properly made a part of the verdict by the jury. Appellant had as much right to have a jury determine what was a reasonable fee, as to have them assess the damages for the injury.

Appellant also complains because no evidence was given by appellee as to what he had paid, or was to pay his attorneys, but only what would be a reasonable fee under the circumstances. The statute provides for a *reasonable* fee, and this should be determined by the jury from the evidence, and not by appellee and his attorney by their contract.

We have examined the instructions and find no serious error in them as a whole. The law seems to have been fairly given to the jury. It is true by a clerical error one of the instructions uses the word *suitable*, when the word unsuitable should be, but we can not think it prejudiced appellant. The meaning and intention of the court is so plain that no one need to misunderstand it.

We see no good reason for interfering with the judgment of the court below, and it will therefore be affirmed.

*Judgment affirmed.*